UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN JACKSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-03611-JPH-MPB |
| BUTTS, *et al.* | ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANT HARMON-NARY'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Kevin Jackson, an inmate at the New Castle Correctional Facility ("NCCF"), brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging that the defendants denied his due process rights by failing to provide meaningful review of his placement in indefinite segregation. He also alleges that defendants Williams, Joseph, and Butts retaliated against him for his use of the prison grievance system by having him transferred to segregation. He contends that he has suffered physical pain and mental health issues while in segregation. Mr. Jackson seeks summary judgment on his claims. Defendant Harmon-Nary has responded to Mr. Jackson's motion for summary judgment and has moved for summary judgment.[1] For the following reasons, Dr. Harmon-Nary's motion for summary judgment is **granted** and Mr. Jackson's motions for summary judgment on his claims against her are **denied**.

**I. Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

---

[1] The claims against the remaining defendants will be considered separately.

1

as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not

required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255. When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)).

## II. Facts[2]

At all times relevant to his claims in this case, Mr. Jackson was an inmate at NCCF and Dr. Harmon-Nary was employed by Wexford of Indiana, LLC as a psychologist at NCCF. Dkt. 104-1, ¶ 2. Dr. Harmon-Nary treated Mr. Jackson and Mr. Jackson's medical records reflect that he was put in restrictive housing at NCCF on January 4, 2017. *Id.*, ¶¶ 3-4. Dr. Harmon-Nary was not responsible for placing him in restrictive housing nor was she a member of the Classification Committee. *Id.* at ¶ 4; dkt. 95-2, p. 22[3] (Mr. Jackson's testimony that Dr. Harmon-Nary did not put him in restrictive housing).

Any decision to place an offender in restrictive housing would be done in compliance with IDOC Policy 02-01-111. Dkt. 104-1, ¶ 13; dkt. 75-2. As a psychologist on the treatment team, Dr. Harmon-Nary did not have the authority to make the decision to place an offender in restrictive housing. Dkt. 104-1, ¶ 13. Her sole involvement was to determine whether there were any mental health conditions that may be negatively impacted by Mr. Jackson's assignment to administrative restrictive status housing and provide treatment for any concerns of a mental health nature. *Id.*

---

[2] Dr. Harmon-Nary initially submitted an incomplete affidavit in support of her motion for summary judgment, s*ee* dkt. 95-1, but has since filed a complete affidavit. Dkt. 104-1.
[3] References to Mr. Jackson's deposition are to the page number of the deposition transcript, not to the CM/ECF page number of the filing.

Once Mr. Jackson was placed in restrictive housing, Dr. Harmon-Nary would visit him on a regular basis for mental health visits. *Id.* at ¶ 6. Dr. Harmon-Nary first saw Mr. Jackson on January 6, 2017 for his initial restrictive housing visit where she conducted a mental status exam. *Id.*, ¶ 5. At that visit, Mr. Jackson presented no mental health concerns, denied any mental health needs, and denied concerns about his restrictive housing placement. *Id.*; Dkt. 104-1, p. 6. He therefore did not have any active mental health diagnosis and his mental health code was an A, indicating he was free of mental illness. Dkt. 104-1, ¶ 5.

Dr. Harmon-Nary next saw Mr. Jackson on February 7, 2017. *Id.*, ¶ 7. At this visit, Mr. Jackson stated he was struggling with "stress, hearing voices of [his] past violence, not sleeping well." *Id.*, dkt. 104-1, p. 9. They discussed his history and he was insightful and interested in interventions to help him work through his stressors. *Id.* In her medical judgment, Dr. Harmon-Nary determined that Mr. Jackson did not present with symptoms consistent with depression, anxiety or formal thought disorder. *Id.* Dr. Harmon-Nary provided him with an Acceptance and Commitment Therapy ("ACT") program and noted that she would continue to monitor him while he was placed in restrictive housing. His mental health code remained an A. *Id.*

On May 18, 2017, Dr. Harmon-Nary saw Mr. Jackson in a confidential medical exam room for a follow-up appointment. Dkt. 104-1, ¶ 8; dkt. 104-1, p. 11. He had been working on the ACT workbooks and stated that he felt relieved and realized that he was fighting what his past was bringing up instead of accepting and moving forward. *Id.* Dr. Harmon-Nary noted that he was using positive coping skills and his mood was improved and stable *Id.* Dr. Harmon-Nary provided him with the next two chapters of the ACT program. *Id.* His mental health code remained an A. *Id.*

Dr. Harmon-Nary next saw Mr. Jackson on June 1, 2017 for a monthly restrictive housing round. Dkt. 104-1, ¶ 9; dkt. 104-1, p. 12. His cell appeared neat and clean. *Id.* He had been accepting meals. *Id.* He did not have an active mental health diagnosis and remained an A mental health code. *Id.* He did not present with or report symptoms consistent with depression, anxiety or formal thought disorder. *Id.* He denied any suicidal/homicidal ideations. *Id.* Based on this encounter, and her prior encounters, Dr. Harmon-Nary determined that Mr. Jackson did not meet seriously mentally ill ("SMI") criteria. *Id.* His mental health plan was to continue monitoring services as indicated. *Id.*

Dr. Harmon-Nary saw Mr. Jackson on June 29, 2017, July 6, 2017, August 11, 2017, and September 8, 2017, and no changes were noted. Dkt. 104-1, ¶ 10; dkt. 104-1, pp. 13-19. His mental health code remained an A as he was not classified as SMI, there were no signs of functional impairment, and therefore, there was no need for treatment. *Id.*

On September 15, 2017, Dr. Harmon-Nary met with Mr. Jackson in a confidential medical exam room at his request. Dkt. 104-1, ¶ 11; dkt. 104-1, p. 21. He explained his frustration that he was still in restrictive housing. *Id.* She encouraged him to follow up with custody through the appropriate channels to try to resolve his questions related to his housing placement. *Id.* He was frustrated at this visit, but presented no signs of depression, anxiety or formal thought disorder. *Id.*

Mr. Jackson was transferred to the Pendleton Correctional Facility on September 29, 2017, at which time he would have begun seeing different mental health providers. Dkt. 104-1, ¶ 12. His mental health code remained an A until May or June 2018 when it was changed to a C by the mental health staff at Pendleton Correctional Facility. Dkt. 95-2, p. 40.

Mr. Jackson had consistent access to medical and mental health staff within the IDOC, and specifically when he was on administrative segregation. Dkt. 104-1, ¶ 17. If at any time his

5

condition changes, improves, or gets worse, he can submit a sick-call request slip and be seen by a member of medical staff. *Id*. Dr. Harmon-Nary did not have the authority to unilaterally remove him from administrative segregation. *Id.*, ¶ 18. She does not believe his placement in administrative segregation exacerbated his mental health needs, as he remained a mental health code A. *Id*.

When asked why he was suing Dr. Harmon-Nary, Mr. Jackson testified that she violated his due process rights. *Id*. Dkt. 95-2, p. 13-14. More specifically, Mr. Jackson testified that Dr. Harmon-Nary was assigned to a classification committee and her job was to uphold the integrity of the investigation and the actions being taken for offenders in segregation. *Id*. at 14. He stated that reviews are supposed to be held weekly and those reviews were not taking place. *Id*. He later testified that his claim against Dr. Harmon-Nary is specific to when he was sent to long-term segregation. *Id*. at 24. Mr. Jackson also testified that Dr. Harmon-Nary "…did not make sure that the IA[4] department followed their policy and administrative procedures during the investigation…" while he was in segregation. *Id*. at 19. When asked if he knew whether Dr. Harmon-Nary had the authority to oversee the IA department, Mr. Jackson testified that he did not. *Id*. He testified that he did not know what Dr. Harmon-Nary's role was on the classification committee. *Id*. at 21.

### III. Discussion

Mr. Jackson and Dr. Harmon-Nary both seek summary judgment on his due process and deliberate indifference claims against her.

---

[4] IA refers to the Internal Affairs department.

A. *Due Process Claims*

Mr. Jackson argues that the defendants, including Dr. Harmon-Nary, violated his due process rights by denying him meaningful weekly Classification Administrative Segregation Reviews. In support of his claims against Dr. Harmon-Nary, Mr. Jackson asserts that she was a member of the Classification Committee and "rubber stamped" his weekly reviews. Dr. Harmon-Nary argues that she was not a member of the Classification Committee nor did she have the authority to remove him from administrative segregation.

"Individual liability under § 1983… requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.")).

Here, it is undisputed that Dr. Harmon-Nary did not participate in Mr. Jackson's placement in segregation and was not a member of the Classification Committee. Mr. Jackson admitted at his deposition that she did not have him placed in segregation. Dkt. 95-2, p. 22. And, while Mr. Jackson argues that Dr. Harmon-Nary was part of the Classification Committee, he has not designated evidence to support this assertion. While he refers to Reports of Classification Hearing that he contends were signed by Dr. Harmon-Nary, *see* dkt. 2-1, pp. 1-15, he does not claim to have personal knowledge as to whether Dr. Harmon-Nary signed those documents. Similarly, Mr. Jackson does not designate evidence in the record showing that Dr. Harmon-Nary was on the Classification Committee. Because it is undisputed that Dr. Harmon-Nary played no role in Mr.

Jackson's placement in segregation or in keeping him there during the time at issue, Dr. Harmon-Nary is entitled to summary judgment on Mr. Jackson's due process claim and his motion summary judgment on that claim must be denied.

### B. *Deliberate Indifference*

Mr. Jackson and Dr. Harmon-Nary also each seek summary judgment on his Eighth Amendment claim against her. Because Mr. Jackson was a convicted offender at all times relevant to his claims, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer*, 511 U.S. at 837; *Pittman v. Cty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

"To determine if the Eighth Amendment has been violated in the prison medical context, [courts] perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016)

(en banc). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998)). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see Plummer v. Wexford Health Sources, Inc.*, 609 Fed. App'x 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

Dr. Harmon-Nary argues that Mr. Jackson did not suffer from a serious medical need. "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles*, 771 F.3d at 409 (citing *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009)). Dr. Harmon-Nary argues that Mr. Jackson did not have a serious medical need because she did not diagnose him with a mental health disorder. Mr.

9

Jackson argues that he is suffering from lower back pains, migraine headaches, and is currently taking medications for his mental health problems.

For the purpose of adjudicating Mr. Jackson's and Dr. Harmon-Nary's cross motions for summary judgment on his Eighth Amendment claim against her, it is not necessary to determine whether Mr. Jackson had a serious medical need. That's because even if he did, no reasonable jury could conclude that Dr. Harmon-Nary was deliberately indifferent to Mr. Jackson's mental health.

Dr. Harmon-Nary evaluated Mr. Jackson several times while he was in segregation. During the first visit, on January 6, 2017, he denied any mental health needs. *Id.* During the next visit, on February 7, 2017, Mr. Jackson stated he was struggling with "stress, hearing voices of [his] past violence, not sleeping well." *Id.*, dkt. 104-1, p. 9. They discussed his history and his condition and Dr. Harmon-Nary determined that Mr. Jackson did not present with symptoms consistent with depression, anxiety or formal thought disorder. *Id.* She provided him with an ACT. *Id*. She saw him again on May 18, 2017. *Id.*, ¶ 8. He had been working on the ACT workbooks and Dr. Harmon-Nary noted that he was using positive coping skills and his mood was improved and stable *Id.* On June 1, 2017, when she saw him at his cell, he did not present with or report symptoms consistent with depression, anxiety or formal thought disorder. *Id.* Dr. Harmon-Nary saw Mr. Jackson on June 29, 2017, July 6, 2017, August 11, 2017, and September 8, 2017, and did not note any changes. Dkt. 104-1, ¶ 10. On September 15, 2017, Dr. Harmon-Nary met with Mr. Jackson in a confidential medical exam room at his request. Dkt. 104-1, ¶ 11. He was frustrated at this visit, but presented no signs of depression, anxiety or formal thought disorder. *Id*.

Based on these facts, no reasonable jury could conclude that Dr. Harmon-Nary was deliberately indifferent to Mr. Jackson's mental health. She saw him regularly when he was in

segregation and discussed his mental health concerns with him. Based on these visits, she concluded in her medical judgment that he was not suffering from a mental health condition at that time. After Mr. Jackson was transferred to Pendleton on September 29, 2017, and Dr. Harmon-Nary was no longer responsible for his mental health care, his mental health status remained an A until May or June of 2018. Dkt. 95-2, p. 40. There is no evidence that would support a conclusion that she consciously disregarded any of his complaints or failed to exercise her medical judgment when treating him. Accordingly, Dr. Harmon-Nary is entitled to summary judgment on Mr. Jackson's deliberate indifference claims.

### IV. Conclusion

The designated evidence shows that Dr. Harmon-Nary had no responsibility for Mr. Jackson's placement in segregation and that she did not display deliberate indifference to his mental health while he was in segregation. According, Mr. Jackson's motions for summary judgment, dkt. [42], and dkt. [43], are **DENIED** and Dr. Harmon-Nary's motion for summary judgment, dkt. [93], is **GRANTED**. The claims against Dr. Harmon-Nary are **dismissed**. The **clerk shall terminate** Dr. Harmon-Nary as a defendant. No partial final judgment shall issue.

**SO ORDERED.**

Date: 3/9/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

KEVIN JACKSON
984670
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

All Electronically Registered Counsel

11