UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-03611-JPH-MPB |
| | ) |
| BUTTS, *et al.* | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING PLAINTIFF KEVIN JACKSON'S MOTION
FOR SUMMARY JUDGMENT ON RETALIATION CLAIMS**

Plaintiff Kevin Jackson, an inmate at the New Castle Correctional Facility ("NCCF"), brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging that the defendants denied his due process rights by failing to provide meaningful review of his continued placement in segregation. He also alleges that defendants Amie Williams, Sammy Joseph, and Keith Butts retaliated against him for his use of the prison grievance system by keeping him in segregation for an extended period. He seeks summary judgment on his retaliation claims.[1]

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.

---

[1] The summary judgment motions on Mr. Jackson's other claims will be addressed in a separate order.

Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II. Facts[2]

Mr. Jackson was incarcerated at the NCCF at all times relevant to the Complaint until September 22, 2017, when he was transferred to another correctional facility. Dkt. 91-1, ¶ 7.

At the relevant times, the defendants were employed at the NCCF as follows: Mr. Butts, Warden of the NCCF; Ms. Williams, Internal Affairs Investigator; and Mr. Joseph, Internal Affairs Investigator. *Id.*, ¶¶ 3, 5. These individuals, among others, were members of the Classification Committee. *Id.*, ¶ 6.

---

[2] The following statement of facts is taken from Mr. Jackson's motion for summary judgment on his retaliation claims, dkt. 26, and the defendants' cross-motion for summary judgment, dkt. 89.

In early January 2017, an inmate at the NCCF died from a drug overdose which resulted in an Internal Affairs Investigation. *Id.*, ¶4. As a result of the investigation, several inmates, including Mr. Jackson, were placed in administrative segregation. *Id.*, ¶ 8; Dkt. 91-3; Dkt. 91-5, ¶¶ 4-5.

Ms. Williams investigated the incident and, as a result of her investigation, drafted a transfer justification letter to Mr. Butts. Dkt. 91-5, ¶ 7; dkt. 91-3. The letter details the results of the investigation and recommends that Mr. Jackson should be transferred to a Department Wide Restrictive Housing Unit – Administrative ("DWRHU-A"). Dkt. 91-3.

At each Classification Committee meeting between January 4, 2017 and May 2, 2017, Mr. Jackson's status in the Restrictive Housing Unit, including his placement there pending the Internal Affairs investigation, the future plan for his placement, and the status of any change of placement was discussed by all Committee members. Dkt. 91-1, ¶ 9; dkt. 91-5, ¶¶ 14-15. At the conclusion of each discussion, each Committee member would sign off on a Report of Classification Hearing and the Report would be delivered to Mr. Jackson. Dkt. 91-1, ¶ 9; dkt. 91-5, ¶ 14-15.

On April 25, 2017, Mr. Fetz completed a Report of Inter-Institutional Transfer requesting that Mr. Jackson be transferred based on the request of Internal Affairs, among other things. Dkt. 91-1, ¶ 16; Dkt. 91-2, p. 1. Mr. Butts signed off on the request the next day. *Id.* This request sought Mr. Jackson's transfer to any Level 2 facility. *Id.* The report was submitted to the Indiana Department of Correction ("IDOC") for processing on the same day. Dkt. 91-1, ¶ 16.

After submitting this report, Mr. Fetz learned that he made an error in seeking Level 2 placement because Mr. Jackson was required to have Level 3 placement for further observation. *Id.*, ¶ 17. Rather than cancel the pending request, which had not yet been processed by the IDOC, Mr. Fetz amended the report to note that Level 3 placement that was necessary. *Id.*, ¶ 18; Dkt. 91-

2, p. 2. The amendment had the same April 25, 2017 date as the original request. *Id.* Mr. Butts signed off the request on May 9, 2017, and Mr. Fetz submitted the amended request to the IDOC on May 10, 2017. Dkt. 91-1, ¶ 18; dkt. 91-2, p. 2.

On June 9, 2017, Mr. Jackson filed an informal grievance complaining that Mr. Fetz had backdated the transfer request. Dkt. 91-2, p. 3. Mr. Fetz responded that the transfer request can take time to process and that it is not uncommon for a letter or document to need to be redone. *Id.*

Sometime after the amended report was submitted, Ms. Williams's transfer justification letter was discovered. *See* dkt. 91-1, ¶ 22. Based on the letter and because the IDOC had not yet processed the transfer request originally submitted in April and resubmitted in May, Mr. Fetz canceled the pending request for transfer. *Id.*, ¶ 23. Mr. Fetz submitted the Report of Inter-Institutional Transfer dated August 16, 2017, to the IDOC, and Mr. Butts signed the report on August 18, 2017. *Id.*; Dkt. 91-2, p. 4.

Between May 3, 2017 and September 21, 2017, Mr. Jackson remained in the Restrictive Housing Unit, Administrative Segregation because a transfer request to another facility had been submitted to the IDOC for processing. Dkt. 91-1, ¶ 10. At each Classification Committee meeting between May 3, 2017 and September 21, 2017, Mr. Jackson's status in the Restrictive Housing Unit, including his placement there pending transfer to another facility, the reason for a transfer, and the status of a transfer was discussed by all Committee members and at the conclusion of that discussion each of those members would sign off on a Report of Classification Hearing and the Report would thereafter be delivered to Mr. Jackson. Dkt. 91-1, ¶ 12; Dkt. 91-5, ¶¶ 14, 15.

Mr. Butts provided no direction in seeking to have Mr. Jackson transferred; instead, he reviewed the information provided to him concerning Mr. Jackson, including the Internal Affairs investigation and the Classification Committee reports, and then recommended to the IDOC a

4

change in Mr. Jackson's placement referenced in the Inter-Institutional Transfer documents he signed. Dkt. 91-1, ¶ 30.

Mr. Jackson filed an informal grievance regarding the transfer request on June 9, 2017, dkt. 91-2, p. 3, and two more on August 28, 2017, dkt. 91-2, p. 5, 6. He filed formal grievances on July 5, 2017, dkt. 91-6, p. 1, and August 7, 2017, dkt. 91-6, p. 3.

Mr. Jackson was transferred to another facility on September 22, 2017, Dkt. 91-1, ¶ 28.

### III. Discussion

Mr. Jackson seeks summary judgment on his retaliation claims. To prevail on his First Amendment retaliation claim, a plaintiff must show that "(1) []he engaged in activity protected by the First Amendment; (2) []he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity []he engaged in was at least a motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (internal citations omitted).

The parties do not dispute the first two elements of a retaliation claim. First, Mr. Jackson alleges that he was retaliated against because he filed grievances, which is an activity that is protected by the First Amendment. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016) ("Grievances addressed to a government agency are, if intelligible, nonfrivolous, and nonmalicious, petitions for the redress of grievances within the meaning of the First Amendment and are therefore prima facie protected by the amendment."). Next, the parties do not dispute that placement in segregation is a deprivation that is likely to deter First Amendment activity. *See Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

The sole dispute is whether Mr. Jackson's filing of grievances was a motivating factor in the decision to place and keep Mr. Jackson in segregation.[3] "[A] motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004).

In support of his claim that his filing of grievances was a motivating factor for the decision to keep him in segregation, Mr. Jackson states that Ms. Williams told him "Since you refuse to cooperate you are going to sit in your little cell until I find something on you." Dkt. 26, p. 4. He also states that that in March 2017, the investigation of all prisoners who were placed in segregation with him was complete and that he was kept in segregation under the false pretense of a continuing investigation. But Mr. Jackson does not connect this evidence to the fact that he filed grievances and therefore does not show how those grievances were a motivating factor in the decision to keep him in segregation.

Even if this evidence does show that Mr. Jackson's actions were a motivating factor in the decision to keep him in segregation, the defendants can rebut his retaliation claim "by showing that his conduct was not a necessary condition of the harm—the harm would have occurred anyway." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). "[T]he ultimate question is whether events would have transpired differently absent the retaliatory motive." *Babcock*, 102 F.3d at 275. Here, the defendants argue that Mr. Jackson was kept in segregation pending his transfer to another facility, not because the investigation was ongoing. They contend that, because of his security level and his involvement in drug trafficking, it simply was not safe to keep him in the general population until he was transferred. Mr. Jackson appears to contend that the change in his security

---

[3] Mr. Jackson points out no evidence that he filed grievances before he was placed in segregation. Accordingly, the Court focuses on Mr. Jackson's contention that he was kept in segregation longer than other inmates because he filed grievances.

6

level and the resubmission of the transfer request show a retaliatory animus against him. But the defendants have provided a reasonable explanation for the change in his security level and the change in the transfer request. Specifically, the defendants explain that Mr. Jackson's security level was changed in the initial transfer request because of an oversight. Similarly, the request for transfer was resubmitted after Mr. Fetz became aware of Ms. Williams's transfer justification letter. The defendants have therefore shown a non-retaliatory animus for keeping Mr. Jackson in segregation after the investigation was complete.

To rebut the defendants' explanations, and show that he is entitled to summary judgment, Mr. Jackson "must produce evidence upon which a rational finder of fact could infer that these explanations were lies." *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). Speculation regarding the defendants' proffered motive "cannot overcome the contrary evidence" of a benign motive. *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013). Mr. Jackson has not submitted sufficient evidence to show that the defendants' explanations were pretext.

Based on these facts, the Court cannot say that no reasonable jury would find in favor of defendants Ms. Williams, Mr. Joseph, and Mr. Butts on Mr. Jackson's retaliation claim. He is therefore not entitled to summary judgment on this claim.

## IV. Conclusion

For the foregoing reasons, Mr. Jackson's motion for summary judgment on his retaliation claims against defendants Amie Williams, Sammy Joseph, and Keith Butts, dkt. [26], is **DENIED**. The Court will address Mr. Jackson's remaining motion for summary judgment and the defendants' cross-motion for summary judgment in a separate order.

**SO ORDERED.**

Date: 3/13/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

KEVIN JACKSON
984670
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

All Electronically Registered Counsel