UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-03611-JPH-MPB |
| ) | |
| BUTTS, et al. ) | |
| ) | |
| Defendants. ) | |

**Order Granting Correctional Facility Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment**

Plaintiff Kevin Jackson, an inmate at the New Castle Correctional Facility ("NCCF"), brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging that the defendants denied him due process by failing to provide meaningful review of his placement in indefinite segregation. He also alleges that defendants Amie Williams, Sammy Joseph, and Keith Butts retaliated against him for filing grievances by having him transferred to and kept in segregation. Mr. Jackson further contends that he has suffered physical pain and mental health issues while in segregation. Mr. Jackson seeks summary judgment on his claims. Defendants Beguhn, Butts, Fetz, French, Joseph, Nornes, Owens, Page, Storm, and Williams (the "Correctional Facility Defendants") have responded to his motions and have also moved for summary judgment. For the following reasons, the Correctional Facility Defendants' motion for summary judgment is granted and Mr. Jackson's motion for summary judgment is denied.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## II. Facts

### A. The Parties

Plaintiff Kevin Jackson was incarcerated at New Castle Correctional Facility ("NCCF") at all times relevant to the Complaint until September 22, 2017, when he was transferred to Pendleton Correctional Facility. Dkt. 91-1, ¶ 7.

At the relevant times, the following defendants were employed as follows: Mr. Fetz, Case Manager in the Classification Department; Mr. Butts, Warden of the NCCF; Ms. Williams, Internal Affairs Investigator; Ms. Page, Case Manager in the STAND Unit; Mr. Joseph, Internal Affairs Investigator; Mr. Storms, Lieutenant in Restrictive Housing Unit; Mr. Beguhn, Program Director; Ms. Nornes, Unit Manager in the STAND Unit; Ms. Owens, Classification Supervisor; and, Ms. French, Assistant Warden, Programs. *Id.*, ¶¶ 3, 5. These individuals were members of the Classification Committee. *Id.*, ¶ 6.

### B. The Requests to Transfer Mr. Jackson

In early January 2017, an inmate at the NCCF died from a drug overdose which resulted in an Internal Affairs investigation. *Id.*, ¶ 5. Consequently, several offenders, including Mr. Jackson, were placed in administrative segregation. Dkt. 91-1, ¶ 8; Dkt. 91-3; Dkt. 91-5, ¶¶ 4-5.

Mr. Jackson was initially held in the Restrictive Housing Unit pending the completion of the Internal Affairs investigation. Dkt. 91-1, ¶ 8. As explained below, he remained in Restrictive Housing Unit between May 3, 2017 and September 21, 2017, because NCCF officials had requested his transfer to another facility. *Id.* ¶ 10.

As a result of her investigation of the drug overdose, Ms. Williams drafted a transfer justification letter to Mr. Butts on April 12, 2017. Dkt. 91-5, ¶ 7; dkt. 91-3. The letter detailed the results of her investigation and recommended that Mr. Jackson be transferred to a Department Wide Restrictive Housing Unit – Administrative ("DWRHU-A"). Dkt. 91-3. This letter was apparently misplaced, however. *See* dkt. 91-1, ¶ 22. Apparently without the benefit of the transfer justification letter, on April 25, 2017, Mr. Fetz completed a Report of Inter-Institutional Transfer requesting that Mr. Jackson be transferred to a Level 2 facility based on the request of Internal

3

Affairs, among other things.[1] Dkt. 91-1, ¶ 16; Dkt. 91-2, p. 1[2]. Mr. Butts signed off on the request the next day. *Id.* The report was submitted to the Indiana Department of Correction ("IDOC") for processing on the same day. Dkt. 91-1, ¶ 16.

Mr. Fetz later realized that he made an error in seeking Level 2 placement because Mr. Jackson was required to have Level 3 placement for further observation.[3] *Id.*, ¶ 17. Rather than cancel the pending request, which had not yet been processed by the IDOC, Mr. Fetz amended the report to note that Level 3 placement was necessary. *Id.*, ¶ 18; Dkt. 91-2, p. 2. The amended report was also dated April 25, 2017. *Id.* Mr. Butts signed the request on May 9, 2017, and Mr. Fetz submitted the amended request to the IDOC on May 10, 2017. Dkt. 91-1, ¶ 18; dkt. 91-2, p. 2.

On June 9, 2017, Mr. Jackson filed an informal grievance complaining that Mr. Fetz had backdated the transfer request. Dkt. 91-2, p. 3. Mr. Fetz responded that the transfer request can take time to process and that it is not uncommon for a letter or document to need to be redone. *Id.*

Sometime after the amended request was submitted, Ms. Williams's transfer justification letter, which indicated the recommendation to transfer Mr. Jackson to DWRHU-A, was discovered.[4] *See* dkt. 91-1, ¶ 22. Based on the letter and because the IDOC had not yet processed the transfer request originally submitted in April and resubmitted in May, Mr. Fetz canceled the pending request for transfer to a Level 3 facility and instead prepared a request for transfer to

---

[1] It is not absolutely clear from the record, but it appears that Mr. Fetz and Mr. Butts did not review this letter before the April 25, 2017, Report of Inter-Institutional Transfer form was completed.
[2] The April 25, 2017 Report of Inter-Institutional Transfer, dkt. 91-2, references "transfer per I.A. See attached" but no Internal Affairs report or documents are attached. While the document may be incomplete, this does not impact the Court's analysis because there is no allegation or evidence that the initial transfer request made on April 25, 2017, was motivated by a retaliatory or otherwise improper purpose.
[3] The defendants do not explain the differences between Level 2 and Level 3 placement and the record does not provide enough information for the Court to discern the differences.
[4] The record does not state who discovered this letter.

4

DWRHU-A. *Id.*, ¶ 23. Mr. Fetz submitted that Report of Inter-Institutional Transfer – dated August 16, 2017 – to the IDOC, which was signed by Mr. Butts on August 18, 2017. *Id.*; Dkt. 91-2, p. 4.

Mr. Butts did not initiate Mr. Jackson's transfer. Dkt. 91-1, ¶ 30. Instead, he reviewed the Internal Affairs investigation and the Classification Committee reports, and then approved the recommended change in Mr. Jackson's placement in the Inter-Institutional Transfer documents. *Id.*

### C. Reviews of Mr. Jackson's Placement

Mr. Jackson remained in the Restrictive Housing Unit from January 4, 2017 through September 21, 2017. Dkt. 91-1, ¶¶ 8, 10.

1. January 4, 2017 – May 2, 2017

Between January 4, 2017, and May 2, 2017, Mr. Jackson was held in the Restrictive Housing Unit pending the completion of the Internal Affairs investigation. Dkt. 91-1, ¶ 8. At each Classification Committee meeting between January 4, 2017 and May 2, 2017, Mr. Jackson's status in the Restrictive Housing Unit, including his placement there pending Internal Affairs investigation, the future plan for placement, and the status of any change of placement was discussed by all Committee members. Dkt. 91-1, ¶¶ 9; dkt. 91-5, ¶¶ 14-15. At the conclusion of each discussion, each Committee member would sign off on a Report of Classification Hearing and the Report would be delivered to Mr. Jackson. Dkt. 91-1, ¶ 9; dkt. 91-5, ¶¶ 14-15. These Classification Committee meetings permit review of the status of each offender in the Restrictive Housing Unit by personnel from various departments within the NCCF, each of whom brings a different perspective, and this same purpose was utilized for Mr. Jackson. *Id.*

2. May 3, 2017 – September 21, 2017

Between May 3, 2017, and September 21, 2017, Mr. Jackson remained in the Restrictive Housing Unit while the transfer request another facility was pending. Dkt. 91-1, ¶ 12. At each

Classification Committee meeting between May 3, 2017 and September 21, 2017, Mr. Jackson's status in the Restrictive Housing Unit, including his placement therein pending transfer to another facility, the reason for such a need to transfer, and the status of such a transfer was discussed by all Committee members and at the conclusion of that discussion each of those members would sign off on a Report of Classification Hearing and the Report would thereafter be delivered to Mr. Jackson. Dkt. 91-1, ¶ 12; Dkt. 91-5, ¶ 14, 15.

Mr. Jackson filed an informal grievance regarding the transfer requests on June 9, 2017, dkt. 91-2, p. 3, and two on August 28, 2017, dkt. 91-2, p. 5, 6. He filed formal grievances on July 5, 2017, dkt. 91-6, p. 1, and August 7, 2017, dkt. 91-6, p. 3.

### D. The Conditions of Administrative Segregation

While he was housed in administrative segregation, Mr. Jackson received medical care, access to the law library, and recreation. Dkt. 91-4, pp. 48-49.[5]

While he was housed in administrative segregation, Mr. Jackson's medical health code was "A," which he described as meaning that he took no psychotropic medications for any disorder. Dkt. 96-1, pp. 62-63. His health code changed from an "A" to a "C" in May or June of 2018, and he began taking medications in June or July of 2018. *Id.*, p. 63. His health code change in May or June of 2018, when he was diagnosed with depression, anxiety, and PTSD. *Id.*, p. 64.

### III. Discussion

Mr. Jackson and the defendants seek summary judgment on his Eighth Amendment deliberate indifference, Fourteenth Amendment due process, and First Amendment retaliation claims.

---

[5] Citations to Mr. Jackson's deposition refer to the deposition transcript page number.

### A. Deliberate Indifference

Because Mr. Jackson was a convicted offender at all times relevant to his claims, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer*, 511 U.S. at 837; *Pittman v. Cty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). The Seventh Circuit has held that "prolonged confinement in administrative segregation may constitute a violation of the Eighth Amendment . . . depending on the duration and nature of the segregation and whether there were feasible alternatives to that confinement." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666 (7th Cir. 2012) (citing *Walker v. Shansky*, 28 F.3d 666, 673 (7th Cir. 1994)).

Mr. Jackson claims that he suffered physical pain and mental health issues while he was in segregation. Dkt. 8. Specifically, he contends that he is suffering from lower back pains, migraine headaches, and is currently taking psychiatric medications. He concludes therefore that the defendants violated his Eighth Amendment rights.

While he was housed in administrative segregation, Mr. Jackson received medical care. Dkt. 91-4, pp. 48-49. In addition, Mr. Jackson's medical health code was "A" which he described as meaning that he took no psychiatric medications for any mental health disorder. *Id.*, pp. 62-63. His health code changed from an "A" to a "C" in May or June of 2018, and he began taking medications in June or July of 2018. *Id.*, p. 63. His health code changed in May or June of 2018, when he was diagnosed with depression, anxiety, and PTSD. *Id.*, p. 64.

In short, Mr. Jackson received medical care, including mental health care, while he was housed in segregation. His mental health code during that time was an A. His mental health code later changed to a C, but that was several months after Mr. Jackson was transferred to Pendleton. Although Mr. Jackson contends that his time in segregation caused the development of his mental health disorders, there is no evidence that the Correctional Facility Defendants were aware that Mr. Jackson suffered any serious mental health needs while he was in segregation at NCCF. Thus, there is no evidence that any of the Correctional Facility Defendants was aware of any serious risk of harm to him and ignored that risk. In addition, while Mr. Jackson was in segregation for about nine months, he does not describe the conditions of segregation and there is therefore no evidence that those conditions violated his Eighth Amendment rights. For these reasons, the Correctional Facility Defendants are entitled to summary judgment on Mr. Jackson's Eighth Amendment claims.

### B. Segregation Review

The parties also seek summary judgment on Mr. Jackson's due process claim. The Due Process Clause applies only to deprivations of life, liberty, and property. *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). But "inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative

8

purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley* 405 F.3d 602, 609 (7th Cir. 2005)). A protected liberty interest "is triggered only when the confinement imposes 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir 2019) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "When considering whether disciplinary segregation imposes atypical and significant hardships, [the Court looks] to both the duration of the segregation and the conditions endured." *Id*. (citing *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)).

Thus, the Seventh Circuit has "found that, depending on the conditions of confinement and whether there were any additional punishments, a period of segregation … shorter than four months may satisfy this requirement" of an atypical and significant hardship. *Lisle*, 933 F.3d at 721 (citing *Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015)). On the other hand, the court has also found that some longer durations in confinement do not. *Id.* (citing *Marion*, 559 F.3d at 698). Mr. Jackson was in segregation at NCCF for about nine months, but the length of time he was in segregation at NCCF on its own is not enough to trigger due process. *See Davidson v. Uchtman*, 2006 WL 2349643, at * 2 (S.D. Ill. Aug. 11, 2006) (nine months in disciplinary segregation did not state a due process violation). To have any chance of success with his claim, Mr. Jackson must show that the conditions of confinement during those nine months were atypical and created significant hardship. *See Lisle*, 933 F.3d at 721.

There is little evidence in the record regarding the conditions Mr. Jackson experienced in segregation at NCCF.[6] *See Lisle*, 933 F.3d at 721 ("Lisle needed to show that the conditions of his confinement in his segregated cell deviated substantially from the ordinary conditions of prison

---

[6] Mr. Jackson was transferred to Pendleton in September 2017. He does describe the conditions at that facility. *See* dkt 26-1 ¶¶ 6, 7. But because the defendants in this case are all NCCF officials, he cannot show that they were personally responsible for reviewing his confinement at Pendleton.

9

life.") (citing cases). "In short, if the disciplinary measures do not 'substantially worsen the conditions of confinement" of an inmate, then he has not been deprived of a protected liberty interest." *Id.* (citing *Miller v. Dobier*, 634 F.3d 412, 414-15 (7th Cir. 2011)).

As the plaintiff, it is Mr. Jackson's burden to show that his due process rights were violated. Accordingly, for purposes of his motion for summary judgment, he must present evidence that shows he is entitled to judgment as a matter of law. *Bunch v. United States*, 880 F.3d 938, 941 (7th Cir. 2018) ("The party that bears the burden of proof for an issue at trial must "cite the facts which it believes [would] satisf[y]" that burden and "demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant . . . ."); *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 662 (7th Cir. 2011) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325–26, (1986). Because Mr. Jackson has failed to present evidence that would support a conclusion that the conditions of his confinement in segregation at NCCF created an atypical and significant hardship, he has failed to meet his burden and he is not entitled to summary judgment on his due process claim. Moreover, there is no evidence that the conditions of segregation constituted an atypical and significant hardship. The defendants are entitled to summary judgment on Mr. Jackson's due process claim.

### C. Retaliation

Mr. Jackson also alleged retaliation claims against defendants Williams, Joseph, and Butts. These defendants seek summary judgment on Mr. Jackson's retaliation claims.[7]

To prevail on his First Amendment retaliation claim, Mr. Jackson must show that "(1) []he engaged in activity protected by the First Amendment; (2) []he suffered a deprivation that would

---

[7] The Court previously denied Mr. Jackson's motion for summary judgment on his retaliation claims.

likely deter First Amendment activity; and (3) the protected activity []he engaged in was at least a motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (internal citations omitted).

There is little dispute about the first two elements of Mr. Jackson's retaliation claims. Mr. Jackson asserts that he was retaliated against because he filed grievances, which is an activity that is protected by the First Amendment. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). Next, placement in segregation is a deprivation that is likely to deter First Amendment activity. *See Babcock v. White*, 102 F.3d 267, 257 (7th Cir. 1996). The parties dispute whether Mr. Jackson's filing of grievances was a motivating factor in the decision to keep him in segregation.[8]

To show that the defendants' actions were retaliatory, Mr. Jackson must provide evidence that retaliatory animus was at least a "motivating factor" in their actions. *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013). "[A] motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004).

Mr. Jackson states that, while he was in segregation, Ms. Williams told him "Since you refuse to cooperate you are going to sit in your little cell until I find something on you." Dkt. 26, p. 4. He also states that that in March 2017, the investigation of all prisoners who were placed in segregation with him was complete and that he was kept in segregation under the false pretense of a continuing investigation. But Mr. Jackson does not connect this evidence to the fact that he filed grievances and therefore does not show how those grievances were a motivating factor in the decision to keep him in segregation.

---

[8] Mr. Jackson points to no evidence that he filed grievances *before* he was placed in segregation. Accordingly, the Court focuses on Mr. Jackson's contention that he was kept in segregation longer than other inmates because he filed grievances.

11

Even if Mr. Jackson can demonstrate that retaliatory animus was a motivating factor in a defendant's actions, this is not enough to establish retaliation as a matter of law. Instead, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays*, 719 F.3d at 635. In other words, the defendants can rebut Mr. Jackson's prima facie case of retaliation "by showing that [their] conduct was not a necessary condition of the harm – the harm would have occurred anyway." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). If the defendants can establish a non-retaliatory motive for the allegedly retaliatory action, Mr. Jackson must "produce evidence upon which a rational finder of fact could infer that these explanations were lies." *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006).

Here, the defendants argue that Mr. Jackson was kept in segregation pending his transfer to another facility, not because the investigation was ongoing. They contend that, because of his security level and his involvement in drug trafficking, it simply was not safe to keep him in general population at NCCF. Mr. Jackson asserts that the change of his security level and the resubmission of the transfer request display a retaliatory animus against him. But the defendants have provided a reasonable explanation for the change in his security level and the change in the transfer request. Specifically, the defendants explain that Mr. Jackson's security level was changed in the initial transfer request because of an oversight. Similarly, the request for transfer was resubmitted after Mr. Fetz became aware of Ms. Williams's transfer justification letter. The defendants have therefore shown a non-retaliatory reason for keeping Mr. Jackson in segregation after the investigation and transfer were complete.

To rebut the defendants' explanations, and show that he is entitled to summary judgment, Mr. Jackson "must produce evidence upon which a rational finder of fact could infer that these explanations were lies." *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). Mr. Jackson

12

contends that the defendants' explanations that he was kept in segregation pending investigation and transfer are merely pretense, but he does not provide evidence to support this assertion. Speculation regarding the defendants' proffered motive "cannot overcome the contrary evidence" of a benign motive. *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013). Mr. Jackson has not submitted sufficient evidence to show that the defendants' explanations were pretext.

Because the defendants have shown that they had non-retaliatory reasons for keeping Mr. Jackson in segregation, they are entitled to summary judgment on his retaliation claim.

### IV. Conclusion

For the foregoing reasons, the Correctional Facility Defendants' motion for summary judgment, dkt. [89], is **granted** and Mr. Jackson's motion for summary judgment, dkt. [57], is **denied**. This ruling, along with the ruling of March 9, 2020, disposes of all except the claims against defendant Shawn O'Conner, who has been served but has not appeared. But Mr. Jackson shall have **through November 23, 2020**, to show why judgment should not be entered in favor of Mr. O'Conner for the same reasons summary judgment has been entered for the other Correctional Facility Defendants. No final judgment shall enter at this time.

**SO ORDERED.**

Date: 10/22/2020

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

KEVIN JACKSON
984670
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

All Electronically Registered Counsel